**KIMBERLY–CLARK CORPORATION,**
Plaintiff–Appellant,

v.

**The PROCTER & GAMBLE DISTRIBUT-ING CO., INC.; and the Procter & Gamble Company, Defendants/Cross–Appellants.**

**Nos. 92–1011, 90–1024.**

United States Court of Appeals,
Federal Circuit.

Aug. 26, 1992.

V. Bryan Medlock, Jr. of Richards, Medlock & Andrews, Dallas, Tex., argued for plaintiff-appellant. With him on the brief were H. Blair White, William H. Baumgartner, Jr., Constantine L. Trela, and Jeffrey D. Mills of Sidley & Austin, Chicago, Ill.

Jerome G. Lee of Morgan & Finnegan, New York City, argued for defendants/cross-appellants. Of counsel were John C. Vassil, John F. Sweeney, Richard C. Komson, and Seth J. Atlas, of Morgan & Finnegan. Also on the brief were Richard C. Witte and Frederick H. Braun of Proctor & Gamble.

Before LOURIE, CLEVENGER, and RADER, Circuit Judges.

LOURIE, Circuit Judge.

This is an appeal and cross-appeal from a judgment of the United States District Court for the Western District of Washington in a patent infringement case involving disposable baby diapers. *Kimberly–Clark Corp. v. The Procter & Gamble Distrib. Co.*, No. C89–502WD (W.D.Wash. Sept. 10, 1991). The district court held that the Enloe patent assigned to Kimberly–Clark Corporation (K–C) was neither invalid nor infringed, that the Enloe patent had priority over the Lawson patent assigned to The Procter & Gamble Company (P & G), and that claims 1, 2, 4–7, 10–12, 14, 16, 19, 20, 23, 24 and 26 of the Lawson patent were accordingly invalid. The district court also held that no inequitable conduct occurred in the procurement of the Enloe patent. Because a comprehensive post-trial settlement agreement between K–C and P & G eliminated the controversy over the infringement issues, we vacate as moot that part of the judgment of the district court dealing with infringement. We affirm that part of the judgment relating to priority, including the invalidity of claims 1, 2, 4–7, 10–12, 14, 16, 19, 20, 23, 24, and 26 of the Lawson patent, and inequitable conduct. The district court also found that claims 3, 8, 9, 13, 15, 17, 18, 21, 22, 25, 27, and 28 of the Lawson patent were not invalid. Since the issues relating to the validity of these claims did not involve priority with respect to the Enloe patent, we do not address them here.

## BACKGROUND

K–C and P & G are primary competitors in the multi-billion dollar disposable diaper market. By the early 1980's, both companies had made substantial improvements in their disposable diapers, but made little progress in containing a baby's bowel movements (BM's). The problem of BM leakage had increased in importance because doctors were placing a new emphasis upon breast feeding, and breast-fed babies apparently tend to have explosive, runny BM's. In the spring of 1982, Kenneth Enloe of K–C conceived the idea of adding stand-up elasticized flaps inboard of the elasticized leg openings of a diaper. He made prototype diapers and successfully tested them, finding the diapers remarkably successful in reducing runny BM leakage. This work eventually led to U.S. Patent 4,704,116 (the Enloe patent), which issued on November 3, 1987.

In January 1985, nearly three years after Enloe's work, Michael Lawson of P & G conceived of using inner flaps to control

leakage in disposable diapers. P & G filed a patent application naming Lawson as the sole inventor on October 11, 1985; this issued as U.S. Patent 4,695,278 (the Lawson patent) on September 22, 1987. Lawson worked alone and was completely unaware of earlier work done by other P & G employees. One of these employees was Kenneth Buell, who in 1979 and 1982 made a disposable diaper with inboard flaps. Buell was also unaware of Lawson's work, until 1988 or 1989, long after the Lawson patent issued.

In its original complaint, K–C alleged that P & G's Pampers® diapers infringed the Enloe patent. K–C also sought a declaration, pursuant to 35 U.S.C. § 291, that the Enloe patent had priority over the Lawson patent. P & G counterclaimed, alleging that K–C's Huggies® diapers infringed its Lawson patent, that the Lawson patent had priority over K–C's Enloe patent, and that the Enloe patent was unenforceable because K–C failed to disclose the issuance of the Lawson patent during the prosecution of the Enloe patent application. P & G also amended its Answer to request the district court to order the naming of Buell and Blevins,[1] along with Lawson, as inventors of the Lawson patent pursuant to 35 U.S.C. § 256.[2] The district court issued findings of fact and conclusions of law holding that the Enloe patent was neither invalid nor infringed, and that the Enloe patent had priority over the Lawson patent. It therefore held certain claims of the Lawson patent invalid. The district court also held that the Enloe patent was enforceable and that no inequitable conduct occurred in the procurement of that patent.

On May 4, 1992, just prior to oral argument in this court, the parties notified the court by letter that an agreement had been signed and that K–C had granted P & G "a

non-exclusive immunity from suit under the Enloe patent-in-suit. P & G in turn, has granted K–C a non-exclusive immunity from suit under the Lawson patent-in-suit." The parties also released each other from damage claims relating to past infringement of the respective patents. Nevertheless, they assert that this appeal and cross-appeal, at least as far as validity and enforceability of the patents are concerned, should proceed to decision by this Court, stating that:

> [w]e believe that various validity (including priority) and enforceability issues arising under 35 U.S.C. § 291 are *not* moot, despite this partial settlement of the litigation.... In particular, the prevailing party on the validity and enforceability issues may be entitled to royalty payments from third parties, and K–C and P & G disagree with respect to who is entitled to the patent rights that may give rise to such royalty payments.

### DISCUSSION

*A. Jurisdiction*

Article III, section 2, of the United States Constitution limits the federal judicial power to enumerated cases and controversies. Moot cases do not present live controversies, and therefore federal courts have no jurisdiction to decide them. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70, 104 S.Ct. 373, 374, 78 L.Ed.2d 58 (1983) (per curiam). A case may become moot even on appeal. *E.g., Gibraltar Indus., Inc. v. United States*, 726 F.2d 747, 749 (Fed.Cir.1984). Thus, we cannot reach the merits of the priority issue unless we find that the parties' settlement did not render that matter moot.

---

1. Blevins also worked on similar subject matter at a P & G laboratory in Germany.

2. Section 256 provides that:
    Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an deceptive intention on his part, the Commissioner may ... issue a certificate correcting such error.

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly.

■ Generally, settlement of a dispute does render a case moot. *Local No. 8–6, Oil, Chemical & Atomic Workers International Union v. Missouri*, 361 U.S. 363, 368–69, 80 S.Ct. 391, 395, 4 L.Ed.2d 373 (1960). However, there are situations "in which one issue in a case has become moot, but the case as a whole remains alive because other issues have not become moot." *University of Texas v. Camenisch*, 451 U.S. 390, 394, 101 S.Ct. 1830, 1833, 68 L.Ed.2d 175 (1981). Here, K–C and P & G settled the infringement issues by granting each other immunity from suit and releasing one another from past infringement damages. We therefore vacate that part of the district court's judgment relating to infringement, as such vacation eliminates judgments on which review has now been foreclosed. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950); *see also U.S. Philips Corp. v. Windmere Corp.*, 971 F.2d 728 (Fed.Cir.1992); *Federal Data Corp. v. SMS Data Products Group, Inc.*, 819 F.2d 277, 280 (Fed.Cir.1987).

■ However, nothing in the settlement agreement moots the priority issues in this case. Because the Lawson patent and the Enloe patent are conceded to interfere, validity, priority, and issues relating thereto have a source of jurisdiction under 35 U.S.C. § 291, distinct from that of the infringement action. *See Albert v. Kevex Corp.*, 729 F.2d 757, 760–61 (Fed.Cir.1984) (the sole basis for jurisdiction under § 291 is whether the patents do in fact interfere).

Section 291 provides in pertinent part:

The owner of an interfering patent *may have relief* against the owner of another by civil action, and the court may adjudge the question of the validity of any of the interfering patents, in whole or in part.

(Emphasis added). The jurisdictional question we must resolve, before evaluating the question of priority, is whether two patent owners, who once did but are no longer accusing each other of patent infringement under section 271, may still be entitled to "relief" under section 291. We conclude

that jurisdiction does exist, that a declaration of priority and the subsequent elimination of an invalid patent that claims the same subject matter as claimed in one's patent are "relief" under the statute.

· ■ The rights *to which one is entitled* by ownership of a patent are principally the right to exclude others from making, using, and selling patented subject matter. 35 U.S.C. § 271(a) ("Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention ... infringes the patent"). The fact that the Patent and Trademark Office issued patents to both K–C and P & G on the same invention is a serious impediment to the enjoyment of this essential right to exclude. Neither patent owner knows if its patent is valid in light of the other's patent, the presumption of validity provided by 35 U.S.C. § 282 having been eroded by the grant of an "interfering" patent. One owner has a patent which it will lose if asserted against third parties, thereby incurring for itself, the accused infringer, and the public unneeded expense. *See* 35 U.S.C. § 102(g). The other has to assert or defend its patent before its presumption of validity, at least regarding priority of invention, is meaningful. Section 291 provides a means for resolving the contested issue of priority of invention solely *between two patent owners*, without involving third parties. Thus, there clearly is "relief" which can be had under section 291 in the absence of infringement claims.

■ Moreover, by its very language, a cause of action under section 291 does not require that "the owner of an interfering patent" accuse "the owner of another" of infringement. Rather, section 291 gives patent owners a separate and distinct basis of jurisdiction if two patents interfere. If infringement of one party's patent by another patent owner were required to create jurisdiction under section 291, that section would be redundant with section 271, the basic infringement section of the statute. When one party accuses another of infringement, and the latter has an invalidity defense of prior invention by another, that

defense can be raised and decided without the need for section 291.

Section 282 states that "[t]he following shall be defenses in any action involving the validity or infringement of a patent . . .: (2) Invalidity of the patent or any claim in suit on any ground specified in part II of this title as a condition for patentability." Part II includes section 102(g), and precludes grant of a patent if, prior to the invention of the applicant, the invention was made by another. Thus, to avoid redundancy, section 291 cannot require for its application that one of the patentees has an infringement claim against the other. "No citation of authority is needed for the proposition that Congress does not legislate unnecessarily." *ASG Indus., Inc. v. United States,* 610 F.2d 770, 783 (CCPA 1979) (Markey, C.J., dissenting); *Platt v. Union Pacific R.R. Co.,* 99 U.S. 48, 58, 25 L.Ed. 424 (1878) ("Congress is not to be presumed to have used words for no purpose"). Therefore, we hold that the "relief" provided by the statute is not limited to infringement "relief," but includes resolution of priority issues between owners of interfering patents, even when by agreement or otherwise, there is no infringement issue between the parties. Thus, we are left to address validity, priority, and issues ancillary thereto, *viz.,* the district court's conclusions relating to enforceability of the Enloe patent.

### B. 35 U.S.C. § 116 [3]

P & G argues that the district court erred in holding that P & G was not entitled to priority. In particular, P & G urges that the invention of the Lawson patent was jointly made by Buell, Blevins, and Lawson, satisfying the joint inventor requirements of 35 U.S.C. § 116; through error without any deceptive intention, *see* 35 U.S.C. § 256, Buell and Blevins were not named as co-inventors along with Lawson. P & G argues that if the district court had corrected the inventorship of the Lawson patent, P & G would then have been given the benefit of the date of Buell's work in March 1979 and February 1982. The Lawson patent would thus have priority over K–C's Enloe patent, which is based on work performed in the spring of 1982.

The district court based its contrary holding, at least in part, on a finding that Lawson knew nothing of the earlier work of Buell upon which P & G now relies:

Lawson worked alone. He knew nothing of the earlier work by Buell or Blevins upon which P & G now relies. Buell and Blevins knew nothing of Lawson's work and contributed nothing to it.

\*   \*   \*   \*   \*   \*

Buell's 1979 and 1982 diaper concepts were not made public, nor made the subject of development records or patent applications, nor disclosed when Buell obtained other diaper-related patents in the 1980's, nor shown to constitute an earlier invention of the Lawson patented diaper.

\*   \*   \*   \*   \*   \*

P & G is not entitled to substitute any person for Lawson as the inventor, or to add joint inventors. There is no basis for attributing an earlier invention date than that claimed by Lawson.

P & G argues that the 1984 amendment to section 116 defines inventorship more broadly to eliminate any collaboration requirement; it argues that two or more people can be joint inventors even if they know nothing of each others' work.

The interpretation of Section 116 is a question of law freely reviewable on appeal. *Glaxo Operations UK Ltd. v. Quigg,* 894 F.2d 392, 395, 13 USPQ2d 1628, 1630 (Fed.Cir.1990). As with any question of statutory interpretation, analysis of section 116 must begin with its language. *Mallard v. U.S. District Court for Southern District,* 490 U.S. 296, 300, 109 S.Ct. 1814, 1817, 104 L.Ed.2d 318 (1989). Reference to legislative history or other extrinsic evidence of the meaning of a statute is necessary if the statute's language is ambiguous, *Burlington N. R.R. Co. v. Okla-*

---

3. Because of our disposition on this issue, we need not address K–C's assertions that the district court made findings with regard to Buell's abandonment, suppression, or concealment which are dispositive of the priority issue.

*homa Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1859, 95 L.Ed.2d 404 (1987), or if the legislative history expresses a clear intent that is not reflected in the statute. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

Prior to its amendment in 1984, Section 116 provided in pertinent part:

> When an invention is made by two or more persons *jointly,* they shall apply for patent jointly and each sign the application and make the required oath, except as otherwise provided in this title.

(Emphasis added.)   It is undisputed that this language required some form of collaboration in order that an "invention" be "made by two or more persons *jointly.*" The courts had also made clear that an invention can be made "jointly" under Section 116 only if two or more persons collaborate in it.   *See, e.g., Shields v. Halliburton Co.,* 667 F.2d 1232, 1236–37, 216 USPQ 1066, 1069–70 (5th Cir.1982); *Monsanto Co. v. Kamp,* 269 F.Supp. 818, 824, 154 USPQ 259, 262 (D.D.C.1967).

After the 1984 amendment, the first sentence of Section 116 remained unchanged, continuing to limit application of the statute to cases in which "an invention is made by two or more persons jointly...."   The amendment added a second sentence to the statute, so that it now reads:

> When an invention is made by two or more persons *jointly,* they shall apply for patent jointly and each make the required oath, except as otherwise provided in this title. *Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent.*

35 U.S.C. § 116 (1988) (emphasis added). Contrary to P & G's argument, the statute neither states nor implies that two inventors can be "joint inventors" if they have had no contact whatsoever and are completely unaware of each other's work.   Indeed, whether inventors "physically work together" would be irrelevant if Congress did not intend that they interact together in some fashion.

P & G also argues that the legislative history of the 1984 amendments to Section 116 shows that collaboration is not a requirement.   We disagree, as that history shows that Congress intended to clarify the law of joint inventorship by codifying the principles stated in *Monsanto.*

The "Section by Section Analysis" in the Congressional Record indicates that Congress intended to codify the principles of *Monsanto:*

> Subsection (a) of section 105 amends section 116 of the patent law to allow inventors to apply for a patent jointly even though (i) they did not physically work together or at the same time, (ii) each did not make the same type or amount of contribution, or (iii) each did not make a contribution to the subject matter of every claim of the patent. Items (i) and (ii) adopt the rationale of decisions such as *Monsanto* [ ]

*Accord* Senate Comm. on the Judiciary, *Patent Law Amendments of 1984,* S.Rep. No. 98–663, 98th Cong., 2d Sess., p. 8 (1984); *see also* 1 Donald S. Chisum, *Patents* 2–13 ("There is no evidence that Congress intended to discard the fundamental requirement that there be some form of collaboration between the joint inventors in the development of the final invention.")

The court in *Monsanto* [ ] stated the pertinent principles as follows:

> A joint invention is the product of *collaboration* of the inventive endeavors of two or more persons *working toward the same end* and producing an invention by their *aggregate* efforts.   To constitute a joint invention, it is necessary that each of the inventors work on the same subject matter and make some contribution to the inventive thought and to the final result.   Each needs to perform but a part of the task if an invention emerges from all of the steps taken together.   It is not necessary that the entire inventive concept should occur to each of the joint inventors, or that the two should physically work on the project together.   One

may take a step at one time, the other an approach at different times. One may do more of the experimental work while the other makes suggestions from time to time. The fact that each of the inventors plays a different role and that the contribution of one may not be as great as that of another does not detract from the fact that the invention is joint if each makes some original contribution, though partial, to the final solution of the problem. *Monsanto*, 269 F.Supp. at 824, 154 USPQ at 262 (emphasis added). *Monsanto* clearly contemplated collaboration, working together, even if not physically.

Contrary to P & G's argument, the companion amendment to Section 103 does not indicate that the collaboration requirement of Section 116 was eliminated. A purpose of the 1984 amendment to Section 103 was to overturn a line of cases under which a prior invention which was not public could be treated under Section 102(g) as prior art for purposes of Section 103 with respect to a later invention made by another employee of the same organization. 130 Cong.Rec. H28071 (Oct. 1, 1984), *reprinted* in 1984 U.S.C.C.A.N. 5827, 5833–34 (discussing the problems caused by *In re Bass*, 474 F.2d 1276, 177 USPQ 178 (CCPA 1973) and *In re Clemens*, 622 F.2d 1029, 206 USPQ 289 (CCPA 1980)).

The practical consequence of these decisions was that research organizations were given an incentive to discourage information sharing and collaboration among their researchers, thus impeding research, because one inventor's unpublished work might be prior art against another's. Congress amended Section 103 to eliminate this problem and thereby to encourage team research. *Id.; see also* Statements of G. Mossinghoff and H. Manbeck, Jr., *Innovation and Patent Law Reform: Hearings on H.R. 3285, H.R. 3286, and H.R. 3605 Before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary*, 98th Cong., 2d Sess. 26–27, 61–62, 71–72 (1984).

P & G's reliance on the regulations and guidelines issued by the Patent and Trademark Office is similarly misplaced. These regulations do not indicate that no collaboration is required. In any event, the language and legislative history of Section 116 make clear that collaboration is required; the Office's authority is limited to implementing that legislative directive. *See In re Mother Tucker's Food Experience, Inc.*, 925 F.2d 1402, 1404–05, 17 USPQ2d 1795, 1797–98 (Fed.Cir.1991) (Patent and Trademark Office cannot waive statutory requirements).

What is clear is that the statutory word "jointly" is not mere surplusage. For persons to be joint inventors under Section 116, there must be some element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting. Here there was nothing of that nature. Individuals cannot be joint inventors if they are completely ignorant of what each other has done until years after their individual independent efforts. They cannot be totally independent of each other and be joint inventors.

■ We therefore hold that joint inventorship under Section 116 requires at least some quantum of collaboration or connection. Thus, the district court was correct in finding that Lawson was the sole inventor of P & G's Lawson patent and that P & G was not entitled to the effective priority date of Buell's work. Enloe's earliest effective priority date in the spring of 1982 therefore antedated the earliest date to which Lawson might be entitled, *viz.*, January 1985. We accordingly affirm the district court's judgment with respect to priority, including the invalidity of the claims 1, 2, 4–7, 10–12, 14, 16, 19, 20, 23, 24, and 26 of the Lawson patent.

*C. Inequitable Conduct*

The district court concluded that K–C did not engage in inequitable conduct in the procurement of the Enloe patent. P & G challenges this holding, asserting, *inter alia*, that John Chiatalas, a K–C in-house patent attorney, intentionally misled the PTO by failing to disclose the issuance of

the Lawson patent while the Enloe patent was pending. We review this matter because it is so closely intertwined with validity and priority, which are subject to review under Section 291, and inequitable conduct has otherwise been treated as ancillary to priority. *Norton v. Curtiss*, 433 F.2d 779, 783, 167 USPQ 532, 536 (CCPA 1970) ("[The] question [of fraud on the Patent Office] is clearly one which is ancillary to priority" which this court has jurisdiction to review on appeal).

It is fundamental that to establish inequitable conduct, an intent to deceive is required. *RCA Corp. v. Data General Corp.*, 887 F.2d 1056, 1065, 12 USPQ2d 1449, 1456–57 (Fed.Cir.1989). A finding of an intent to deceive may follow from an assessment of materiality, knowledge, and surrounding circumstances, including evidence of good faith. *Kingsdown Medical Consultants Ltd. v. Hollister Inc.*, 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). The district court found no such intent, stating:

> Mr. Chiatalas took roughly ten weeks to evaluate the question [whether the Lawson patent and the Enloe application were interfering]. This was not an unreasonable time given his relative inexperience as a patent lawyer, his heavy workload, and the nature of the question. Mr. Chiatalas did not act with any intent to deceive the PTO in not bringing the Lawson '278 patent to the examiner's attention earlier.

There is no clear error in this finding. P & G raises no inequitable conduct issues that were not fully considered by the district court. The Lawson patent issued on September 22, 1987, after K–C had paid the final fee in the Enloe application; the Enloe patent issued six weeks later on November 3. At trial, Chiatalas testified that by the time the Enloe patent issued, he had not had time to study the Lawson patent "sufficiently to make a determination" as to "what the heck to do about it."

Moreover, five weeks later, on December 10, 1987, Chiatalas filed an "Information Disclosure Statement" in connection with the examination of a sibling application to the Enloe patent, which application claimed related subject matter. In this statement, Chiatalas disclosed the issuance of the Lawson patent, the issuance of the Enloe patent, and that "[t]he claims of the Lawson patent are deemed relevant under 35 U.S.C. § 102(g) to the pending continuing application." This conduct is not consistent with an intent to deceive.

While prudence might have dictated telling the Patent and Trademark Office about the patent immediately, there is no evidence of an intent to deceive in letting the Enloe patent go to issuance. Thus, the district court did not abuse its discretion by concluding that K–C did not engage in inequitable conduct in procuring the Enloe patent.

We have considered the other arguments by counsel on both sides and find them to be without merit.

## CONCLUSION

In view of our conclusion that the settlement agreement mooted the issues relating to infringement, we vacate the district court's judgment relating to infringement. We affirm the district court's judgment in all other respects.

## COSTS

No costs.

VACATED–IN–PART and AFFIRMED–IN–PART.