IP INNOVATION L.L.C. and
Technology Licensing
Corp., Plaintiffs,

v.

RED HAT, INC. and Novell,
Inc., Defendants.

Case No. 2:07–cv–447 (RRR).

United States District Court,
E.D. Texas,
Marshall Division.

March 29, 2010.

Arthur A. Gasey, Paul C. Gibbons, David J. Mahalek, Joseph A. Culig, Niro, Scavone, Haller & Niro, Chicago, IL, for the Plaintiffs IP Innovation and Technology Licensing Corporation.

Mark Nolan Reiter, Amy Elizabeth LaValle, Gibson Dunn & Crutcher, Dallas, TX, Josh A. Krevitt, Gibson Dunn & Crutcher, New York, NY, H. Mark Lyon, Gibson Dunn & Crutcher, Palo Alto, CA, for the Defendants Red Hat and Novell.

**ORDER DENYING DEFENDANTS RED HAT, INC. AND NOVELL, INC.'S MOTION FOR SUMMARY JUDGMENT ON U.S. PATENT NOS. 5,072,412; 5,394,521; AND 5,533,183 FOR INVALIDITY UNDER 35 U.S.C. § 116 AND 35 U.S.C. § 102(1) & (g)**

RANDALL R. RADER, Circuit Judge sitting by designation.

Defendants Red Hat, Inc. and Novell, Inc. seek summary judgment of invalidity of U.S. Patent Nos. 5,072,412; 5,394,521; and 5,533,183 based on 35 U.S.C. § 116 and 35 U.S.C. § 102(f) & (g) (Docket No.

110). After considering briefing and oral argument, this court **DENIES** Defendants' motion because factual issues prevent a ruling of summary judgment.

## I.

Plaintiffs IP Innovation L.L.C. and Technology Licensing Corporation own by assignment U.S. Patent Nos. 5,072,412 ("'412 patent"), 5,394,521 ("'521 patent"), and 5,533,183 ("'183 patent"). The patents, based on the same specification, carry the title "User Interface with Multiple Workspaces for Sharing Display System Objects." The patents claim a computer-based graphical user interface that spans across multiple workspaces. A "workspace" is a "display system entity that includes a collection of display objects together with spatial display relations between them." Docket No. 87 at 23. The display objects, called "tools," have visually distinguishable features (e.g., icons or windows). Different workspaces can share the same tools. When a user switches from one workspace to another to perform different tasks, the tools that are common to the workspaces appear in the new workspace.

The patents are based on the same disclosure. All patents name three inventors: Dr. D. Austin Henderson, Jr.; Dr. Stuart K. Card; and Mr. John T. Maxwell, III. Defendants allege that the patents are invalid for misjoinder of inventors under 35 U.S.C. § 116.

## II.

### A.

This court grants summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. In reviewing a genuine issue of material fact, this court draws all justifiable inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Id.* at 248–49, 106 S.Ct. 2505.

### B.

"When an invention is made by two or more persons jointly, they shall apply for patent jointly . . . ." 35 U.S.C. § 116. Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time; (2) each did not make the same type or amount of contribution; or (3) each did not make a contribution to the subject matter of every claim of the patent. *Id.*

Joint inventorship under section 116 requires "some element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting." *Kimberly–Clark Corp. v. Procter & Gamble Co.,* 973 F.2d 911, 916 (Fed.Cir. 1992). Thus, there must be some "collaboration or concerted efforts" among the inventors. *Eli Lilly & Co. v. Aradigm Corp.,* 376 F.3d 1352, 1359 (Fed.Cir.2004). Two inventors cannot be joint inventors "if they are completely ignorant of what each other has done until years after their individual independent efforts." *Kimberly–Clark,* 973 F.2d at 916. The inventors named in an issued patent are presumed correct, and a party alleging misjoinder of inventors must prove its case by clear and convincing evidence. *Eli Lilly,* 376 F.3d at 1358.

### C.

In this case, two development efforts each gave rise to the inventions claimed in

the patents-in-suit: (1) the "Desk Tops" system developed solely by Mr. Maxwell; and (2) the "ROOMS" system developed by Drs. Card and Henderson. *See* '412 patent col.43 ll.10–13.

Sometime between 1981 and 1983, Mr. Maxwell conceived of and implemented Desk Tops in a Cedar programming environment at Xerox Corporation. Desk Tops "creates several virtual desktops, each of which appears to be a normal desktop when it is displayed .... When the user switches between desktops, the current configuration of viewers is saved in the current desktop before moving the viewers in the new desktop onto the screen." '412 patent col.43 ll.16–17, 32–35. All patents-in-suit describe Desk Tops as one embodiment of some of the claims. '412 patent col.43 ll.11–12; '183 patent col.41 ll.41–43; '521 patent col.43 ll.32–34.

In or around 1986, Drs. Card and Henderson conceived of and implemented a different system called "ROOMS" in a Lisp programming environment at Xerox Corporation. ROOMS contained all features of Desk Tops and had a few additional features, such as an "overview" feature that could simultaneously provide small-sized representations of all virtual desktops. '412 patent col.43 l.54–col.44 ll.11. A user could then easily navigate to a new workspace by selecting one of the miniature workspace representations.

Plaintiffs acknowledge that Mr. Maxwell did not work on ROOMS with Drs. Card and Henderson. Also, the record shows that Drs. Card and Henderson did not work directly with Mr. Maxwell in implementing Desk Tops. The parties dispute whether Drs. Card and Henderson knew about Desk Tops before they reduced ROOMS to practice and, if so, whether they built ROOMS as an improvement over Desk Tops.

The inventors' deposition testimonies suggest, but do not conclusively show, that Desk Tops and ROOMS were the results of completely separate development efforts. Mr. Maxwell explained that Desk Tops and ROOMS were "invented and implemented completely independent of each other." Maxwell Dep. at 20:23–21:1. Dr. Henderson testified that he and Dr. Card were not aware of Desk Tops while they were implementing ROOMS. Henderson Dep. at 53:21–24. Dr. Card likewise testified that he could not recall looking at Desk Tops. Card Dep. at 46:14–15. Defendants contend that Mr. James Beran, a patent attorney, was the individual who first discovered Desk Tops while conducting a prior art search in preparing a patent application for ROOMS. Maxwell Dep. at 51:12–22; Henderson Dep. at 54:25–55:2.

■ A factual issue about collaboration, however, arises from the rest of the record. Specifically, a July 1986 article on ROOMS written by Drs. Card and Henderson suggests that they knew about and might have designed ROOMS as an improvement over Desk Tops. The July 1986 article in relevant part states:

> Simultaneous access to separate information. *An advance of Rooms over previous systems* is in the mechanisms worked out to share individual windows among workspaces through Placements and to share collections of windows through inclusion. [ . . . ] *Cedar multiple desktops* does have a facility for allowing this, similar to our Placements, but the interface mechanisms that allow the user to take easy advantage of this facility are not developed.

D. Austin Henderson, Jr. & Stuart K. Card., *Rooms: The Use of Multiple Virtual Workspaces to Reduce Space Contention in a Window–Based Graphical User Interface*, ACM TRANSACTIONS ON GRAPHICS, vol.5 no.3, at 241 (1986) (emphases added). Desk Tops is a feature of

the Cedar programming environment. Another reference in the same article lists "the Cedar programming environment multiple desktop overview [with] 16 desktops ... shown in miniature" as an "example of multiple virtual workspaces." *Id.* at 215. This passage refers to "multiple virtual workspaces" and "16 desktops," suggesting again that Drs. Card and Henderson knew of and used in their work the Cedar-based Desk Tops work of Mr. Maxwell. Still again, Drs. Card and Henderson also acknowledge and thank "John Maxwell and Dan Swinehart for discussions on Cedar windows ...." *Id.* at 242.

Thus, the July 1986 written document explains that ROOMS is an improvement over "previous systems" and lists "Cedar multiple desktops" as one such system. Dr. Card testified that "Cedar multiple desktops" in the article might refer to Mr. Maxwell's Desk Tops. Card Dep. at 95:16–25. As Defendants allege, Desk Tops might not have been the only "example of multiple virtual workspaces" in Cedar programming environment. Also, because Mr. Swinehart apparently did not work on Desk Tops with Mr. Maxwell, Maxwell Dep. at 54:22–23, the authors' acknowledgement of Mr. Maxwell's assistance on "Cedar windows" might not relate to Desk Tops. Still this court must acknowledge that this contemporaneous article creates a genuine dispute over the material fact of whether the July 1986 article shows that ROOMS was built upon Desk Tops. This court also acknowledges that this document may be better evidence than the inventors' memories reflected in their depositions taken many years after their inventive activities.

■ Defendants allege that even if the article referred to Desk Tops, it does not indicate that Drs. Card and Henderson knew about and built ROOMS upon Desk Tops because they had already invented ROOMS by July 1986. Defendants rely on Dr. Henderson's testimony that he and Dr. Card reduced their invention to practice at least by January 1986, months before publication of the July 1986 article. *See* Henderson Dep. at 127:8–13. Plaintiff's, however, rely on March 25, 1987, the filing date of the '412 patent, as the reduction to practice date. In support, Plaintiffs point to Dr. Card's inventor notebook from mid–1986, which shows that he and Dr. Henderson were continuing their work on ROOMS in July of 1986. These competing theories with some credible evidence supporting both positions create another factual dispute about when Drs. Card and Henderson actually reduced their claimed invention to practice.

Considering the evidence in the light most favorable to Plaintiffs, as it must at this summary judgment stage, this court discerns a genuine dispute of material fact about Drs. Card's and Henderson's awareness of Desk Tops by July 1986 and about Desk Tops role in the creation of ROOMS. Another factual dispute prevents this court from making a finding about the time that the inventors reduced the inventions to practice. Those factual disputes mean that this court cannot reach Defendants' invalidity arguments under 35 U.S.C. § 102(f) and (g) as premature.

### III.

Accordingly, because there is a genuine dispute over material facts, this court **DENIES** Defendants' summary judgment motion of invalidity.

It is SO ORDERED.