NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————————

**KIMBERLY-CLARK WORLDWIDE, INC.,**
*Plaintiff-Appellant,*

v.

**FIRST QUALITY BABY PRODUCTS, LLC, FIRST QUALITY PRODUCTS, INC., FIRST QUALITY RETAIL SERVICES, LLC,** AND **FIRST QUALITY HYGIENIC, INC.,**
*Defendants-Appellees,*

———————————————

2011-1157

———————————————

Appeal from the United States District Court for the Middle District of Pennsylvania in Case No. 09-CV-1685, Senior Judge William W. Caldwell.

———————————————

Decided: November 15, 2011

———————————————

CONSTANTINE L. TRELA, JR., Sidley Austin, LLP, of Chicago, Illinois, argued for plaintiff-appellant. With her on the brief was RACHEL H. TOWNSEND, of Washington, DC. Of counsel on the brief were MARC S. COOPERMAN and JANICE V. MITRIUS, Banner & Witcoff, Ltd. of Chicago, Illinois.

D. MICHAEL UNDERHILL, Boies Schiller & Flexner LLP, of Washington, DC, argued for defendants-appellees. With him on the brief were ERIC J. MAURER and MICHAEL A. BRILLE. Of counsel on the brief were KENNETH P. GEORGE and IRA E. SILFIN, Amster, Rothstein & Ebenstein, LLP, of New York, New York.

Before LOURIE, BRYSON, and REYNA, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Kimberly-Clark Worldwide, Inc. ("K-C") appeals from the district court's orders compelling discovery relating to three alternative dispute resolution agreements and the proceedings that occurred pursuant to those agreements. Order, *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 1:09-CV-1685 (M.D. Pa. May 21, 2010) ("*Order*"), ECF No. 208; Order, *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 1:09-CV-1685 (M.D. Pa. July 2, 2010), ECF No. 236 ("*Order on Reconsideration*"). In this appeal, K-C challenges the district court's holding that the sought information is not privileged. Because the district court did not abuse its discretion in finding that K-C had failed to show that a privilege shielded the requested information from discovery, we *affirm*.

BACKGROUND

I.

This patent case relates to disposable absorbent products, such as diapers. K-C competes in that market with First Quality Baby Products, LLC; First Quality Products, Inc.; First Quality Retail Services LLC; and First Quality Hygienic, Inc. (collectively, "First Quality"). The issue in

this appeal, however, does not relate to the underlying technology, but the discoverability of information relating to three alternative dispute resolution proceedings between K-C and Proctor & Gamble ("P&G") that involved patents at issue in this case.

Prior to filing suit against First Quality, K-C was involved in patent infringement disputes with a number of companies, including P&G. Initially, the parties filed patent infringement claims in federal court. *See, e.g., Kimberly-Clark Corp. v. P&G Distrib. Co.*, 973 F.2d 911 (Fed. Cir. 1992). Subsequently, between 1994 and 2003, K-C and P&G entered into a series of agreements that constructed a dispute resolution process to help resolve the parties' disputes.

Three of these agreements, each entitled Dispute Resolution Agreement, are at issue here, and each agreement contains similar terms relevant to this appeal.[1] First, the Dispute Resolution Agreements provided a dispute resolution framework. Under the Agreements, a panel of arbitrators would issue a "clear and concise decision." However, the decision would be non-binding and each party retained the right to seek de novo judicial resolution. The decision would issue after the parties presented their cases at a hearing. Generally, the proceedings would be governed by federal law on procedure, burdens of proof, and substantive patent issues. At all

---

[1] The parties had marked the Dispute Resolution Agreements as Confidential. At oral argument, however, the parties agreed to waive the confidentiality restriction to allow the court to discuss the Agreements' terms in an opinion. Oral Arg. at 0:11–1:20, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 11-1157.mp3. We discuss the terms of the Agreements only to the extent necessary to resolve the parties' disputes.

times, the parties were prohibited from communicating ex parte with the arbitrators.

Second, the Dispute Resolution Agreements detailed pre-hearing, hearing, and post-hearing procedures. The Agreements provided for limited discovery, including document requests, depositions, and exchanges of claim charts and other disclosures. The Agreements appointed an arbitrator to resolve discovery disputes, and the parties were prohibited from communicating ex parte with the arbitrator. The Agreements also allowed the parties to file briefs. At the hearing, the parties would present argument and testimony, and submit other forms of evidence. The panel would then issue a decision. The Agreements required the initial panel decision to contain specific findings of fact and conclusions of law in compliance with the Federal Rules of Civil Procedure. After the issuance of the decision, the losing party could appeal to a second panel of arbitrators who would review the decision.

Third, the Agreements contained fee-shifting provisions. The party that did not prevail at the hearing was responsible for paying the arbitrators' fees for the proceeding. In addition, if a party's appeal from the initial decision was not justified, the losing party was responsible for the opposing party's attorney fees.

Finally, two of the Agreements contained a stipulation that allowed P&G to limit its liability if it did not prevail before the first panel of arbitrators or on appeal. The provision provided that if P&G ceased making, using, or selling infringing products in the United States within six months of the original decision, K-C would not file suit against P&G and would not seek past damages.

It appears that K-C and P&G conducted proceedings under the Agreements. Eventually, K-C and P&G settled their disputes.

II.

In 2009, K-C sued First Quality, alleging that First Quality infringed a number of patents, including patents that had been at issue in the proceedings conducted under the Dispute Resolution Agreements. After becoming aware of the Agreements, First Quality moved to compel production of discovery relating to the Agreements and the underlying proceedings. K-C opposed production on the basis that the materials were privileged and not discoverable.

The district court granted First Quality's motion. The district court concluded that "mediation is not an adversarial process," but instead is "a procedure by which parties reach a mutual agreement with the aid of a third-party who assists in fostering communication between the parties, and does not act as a decision-maker." *Order* at 3. Applying that definition, the court concluded that the Agreements created an arbitration proceeding, not a mediation. *Id.* at 3–4. While the court concluded that a federal mediation privilege was warranted, it concluded that the proceedings structured by the Dispute Resolution Agreements fell outside that privilege. *Id.* at 4.

K-C moved for reconsideration, and the district court denied K-C's motion. Rather than conclude that the Dispute Resolution Agreements created a mediative process, the court concluded that the Agreements created a "quasi-judicial procedure" by which the parties "obtained a decision from a panel of neutral arbitrators." *Order on Reconsideration* at 2. The district court specifically focused on the adversarial nature of the proceedings structured in the Agreements—prohibiting ex parte communications with the arbitrators; providing for formal pretrial disclosures, discovery, and hearings; requiring the decision to comply with the Federal Rules of Civil

Procedure; providing for an appeals process; and including fee-shifting provisions. *Id.*

The court, however, certified the issue for appeal pursuant to 28 U.S.C. § 1292(b). K-C timely appealed, and, on appeal, we granted K-C permission to pursue an interlocutory appeal. We have jurisdiction pursuant to 28 U.S.C. § 1292(c)(1).

## DISCUSSION

Under Federal Rule of Civil Procedure 26(b)(1), a party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." K-C does not question that First Quality has requested relevant information. Rather, K-C argues that information created under the Dispute Resolution Agreements is privileged. K-C presents a two-step argument. First, K-C argues that federal courts should recognize a mediation privilege under the authority provided by Federal Rule of Evidence 501. Second, K-C argues that the proceedings under the Agreements were mediations. Thus, concludes K-C, the district court erred in compelling production of information that is covered by a federal mediation privilege.

We disagree. The Dispute Resolution Agreements set up an arbitration proceeding, not mediation. The Agreements set up an adversarial proceeding in which a panel specifically denoted as "arbitrators" issued formal findings of fact and conclusions of law. As part of the proceeding, the parties would serve briefs and claim charts and undertake discovery, including depositions. The parties then, at a formal hearing, would present argument, documentary evidence, and testimony, including testimony on cross-examination. At all times, ex parte communication with the arbitrators was prohibited. The arbitrators were to render a "clear and concise decision."

Thus, the process under the Agreements generally resembled an adversarial proceeding in court, not mediation.

Despite the adversarial nature of the arbitration proceedings delineated in the Agreements, K-C argues that the proceedings were mediative because the decisions issued by the arbitrators were "non-binding" and had the purpose of facilitating settlement. That argument is unpersuasive. As an initial matter, under the Agreements, the decisions would affect the parties' legal rights. The parties stipulated that P&G would avoid liability for past damages if it ceased infringing activities within six months of the issuance of an adverse decision. In addition, an arbitration panel's decision would trigger fee-shifting provisions.

In any event, arbitration does not necessarily become a mediative process simply because an arbitration panel's decision is "non-binding." In addition, under the Dispute Resolution Agreements, there was no framework to allow a party and a neutral to openly and freely discuss a party's case. In fact, the Agreements discouraged a party from freely discussing the weak points in its case—the Agreements barred ex parte communications with the arbitrators and contain "loser pays" fee-shifting provisions. Thus, even if K-C has correctly characterized the decisions as "non-binding," that distinction is not sufficient in this case to rebrand the adversarial arbitration proceedings as mediations.

Finally, while the designation of the panel as "arbitrators" is not conclusive on the issue before us, the parties in the prior cases had the opportunity to choose the language of their agreement, and that language certainly carries some weight as it applies to K-C here.

Because we conclude that K-C failed to show that the district court abused its discretion in concluding that the

Dispute Resolution Agreements did not provide for mediation, we decline to determine if, in light of reason and experience, we should recognize a mediation privilege.

CONCLUSION

We have considered K-C's remaining arguments and conclude that they are without merit. For the foregoing reasons, the order of the district court is

**AFFIRMED**