NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LASERFACTURING, INC.**
AND **THE TWENTYFIRST CENTURY CORPORATION**
(doing business as TC Arts & Laserfactures),
*Plaintiffs-Appellants,*

**v.**

**OLD CARCO LIQUIDATION TRUST,**
*Defendant-Appellee.*

---

2009-1013

---

Appeal from the United States District Court for the Southern District of Texas in Case No. 4:07-CV-00207, Judge Melinda Harmon

---

Decided: September 17, 2012

---

EDWARD E. GOLDSTEIN, Goldstein, Faucett & Prebeg, LLP, of Houston, Texas, for plaintiffs-appellees. With him on the brief was CALIFF T. COOPER,

JENNIFER L. SWIZE, Jones Day, of Washington, DC, for defendant-appellee.

FRANK C. CIMINO, JR., Dickstein Shapiro LLP, of Washington, DC for amicus curiae Chrysler Group, LLC. With him on the brief was MEGAN S. WOODWORTH.

―――――――――――

Before RADER, *Chief Judge*, BRYSON and PROST, *Circuit Judges*

RADER, *Chief Judge*.

The United States District Court for the Southern District of Texas, on summary judgment, determined that DaimlerChrysler Corporation ("DaimlerChrysler") did not infringe U.S. Patent No. 5,595,670 (the '670 patent) owned by Laserfacturing Inc. and The Twentyfirst Century Corporation d/b/a TC Arts & Laserfactures (collectively "Laserfacturing"). Because the trial court correctly construed the claim term "sheet" and properly discerned no infringement, this court affirms.

## I.

The '670 patent discloses a method of welding using a laser or electron beam. *See* '670 patent at col. 4 ll. 18-22. The invention discloses ways to weld more quickly and with fewer defects by focusing the welding beam in an oblong shape. *Id.* at col. 4 ll. 18-22. The independent asserted claim reads:

1. A method of welding using a high energy density radiation beam comprising the steps of:

(a) providing 1) a pair of sheets to be welded together with the sheets being constructed of a material having a Pdens min characteristic value with Pdens min being the minimum average power density of a high energy density radiation beam focused as a beam spot on at least one of the

sheets necessary to achieve deep penetration keyhole welding for the type of sheet material being welded in Watts per square centimeter, 2) a high energy density radiation beam source capable of generating a high energy density radiation beam having an average power, P, of at least one kilowatt and which is great enough to achieve deep penetration keyhole mode welding for the material being welded, and 3) a beam delivery system capable of focusing the beam into an oblong shaped spot onto at least one of the sheets;

(b) positioning one sheet in close proximity to the other sheet forming a weld line;

(c) focusing the high energy density radiation beam into an oblong focused beam spot shape having a longitudinal length, L, in millimeters, and a width, w, in millimeters, such that the focused beam spot width, w, satisfies:

$$w2 \leq (P/15) * (106/P\mathit{dens\ min})$$

and the length, L, of the oblong focused beam spot is within the following limits:

$$1.5*w \leq L \leq (P/w) * (10/P\mathit{dens\ min})$$

(d) training the oblong focused beam spot onto at least one of the sheets for welding the one sheet to the other sheet, and wherein a longitudinal axis of the oblong focused beam spot is acutely angled within the range of +45 degrees from a direction parallel to a direction tangent to the weld line; and

(e) moving the beam relative to at least one of the sheets in a welding direction along the weld line at a welding speed of at least two meters per minute.

*Id.* at col. 20 ll. 50 - col. 21 ll. 24 (emphasis added to disputed term).

Laserfacturing alleges that three of DaimlerChrysler's laser welding stations at its transmission manufacturing plants infringe the '670 patent. The court held a claim construction hearing to address several disputed claim terms, including the term "sheet." DaimlerChrysler proposed that "sheet" means a "broad thin piece of material with generally uniform thickness" while Laserfacturing proposed "element to be welded." DaimlerChrysler also moved for summary judgment of non-infringement based on its proposed construction of "sheet," arguing that it welds "transmissions" not "broad thin pieces of material each with generally uniform thickness." In response, Laserfacturing attacked both the motion as premature and DaimlerChrysler's proposed construction as incorrect. The district court adopted DaimlerChrysler's construction and granted summary judgment of non-infringement. The trial court reasoned that the welded "transmission" is not a "sheet" under the court's construction. Moreover the district court discerned that the accused devices do not practice at least one limitation of the asserted claim. Laserfacturing appeals only the construction of "sheets."

## II.

As a preliminary matter, this court examines jurisdiction. After this appeal was instituted, DaimlerChrysler filed for Chapter 11 bankruptcy protection. This court stayed the appeal pending resolution of the bankruptcy proceedings. During the bankruptcy proceedings, DaimlerChrysler became known as Chrysler LLC, which became known as Old Carco. The Liquidation Trust is Old Carco's successor-in-interest. Old Carco and Laserfacturing filed a joint stipulation requesting this court to proceed with this appeal. The bankruptcy court approved

that stipulation. Following Laserfacturing's request, this court reinstated the appeal.

Chrysler Group LLC, who purchased substantially all of the Liquidation Trust's operating assets, submitted an *amicus curiae* brief urging this court to dismiss for lack of jurisdiction. Chrysler contends the appeal is moot because Laserfacturing stipulated that it waived its claim against the estate relating to the current litigation.

The stipulated waiver, however, does not resolve the parties' infringement dispute. As this court explained in *Kimberly-Clark Corp. v. Procter & Gamble Distribution Co.*, settlements generally render a case moot, unless "the case as a whole remains alive because other issues have not become moot." 973 F.2d 911, 914 (Fed. Cir. 1992) (citing *Local No. 8–6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri*, 361 U.S. 363, 368–69 (1960) and quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 394 (1981).) In the present case, the stipulation does not address the issue of infringement, which could have downstream effects on the parties or their successors; accordingly, the issue remains live and in dispute. Because the question of infringement is not moot, this court has jurisdiction under 28 U.S.C. § 1295.

## III.

Claim construction is an issue of law which this court reviews without deference. *Markman v. Westview Instruments*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc) *aff'd* 517 U.S. 370 (1996). The best evidence of the proper meaning of a claim term is the patent itself, and the prosecution history if available. *Id.* A claim term is typically construed as it would be by one of ordinary skill in the art in the context of the entire patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). In order to help determine how one of ordinary

skill in the art would interpret a claim term, the court may consider extrinsic sources that inform the judge on the relevant scientific principles and state of the art. *InnovalPure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 318 F.3d 1111, 1116 (Fed. Cir. 2004). If the patentee clearly defines a claim term in the specification differently from what the word would ordinarily mean, the patentee's definition governs. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1349, 1366 (Fed. Cir. 2002).

Laserfacturing argues the specification supports its broad construction of "sheet" as an "element to be welded." Laserfacturing contends the patent's welding descriptions are not limited to the court's construction of a "broad thin piece of material with generally uniform thickness" and references the patent's description of welding in the prior art for support. '670 patent at col. 1 ll. 22-26 ("For example, when laser welding metal sheets, the suitable welding speeds that can be achieved are typically a direct function of the penetration depth required. Hence, as sheet thickness increases welding speed typically decreases."). Laserfacturing argues the art of welding is only concerned with the region being welded and the court's limitation restricting the word "sheet" to objects having uniform thickness is arbitrary, improperly narrow, and limited to the certain embodiments disclosed in the specification. Laserfacturing also contends the patent's use of the term "workpiece" supports its broad construction of "sheets" as simply the material that is being welded.

The specification's references to other various material shapes do not require an all-inclusive construction of "sheets." As the district court noted, all "sheets" are "workpieces" but not all "workpieces" are "sheets." The patent consistently discusses the term "sheets" according to its plain and ordinary meaning. By staying within the

term's customary use, the intrinsic record does not support a definition that reaches beyond or differs from what one of ordinary skill in the art understands as "sheets." Moreover, a broad meaning of the term would discount the claim's choice of the word "sheets." Thus, the language of the claim itself supports the trial court's construction.

The district court accurately referenced the specification and reviewed the term's use in the specification to support its reading of the claim. The district court quoted three parts of the patent as support for its construction. The first sets out the preferred thickness of the sheet material, "[p]referably, the sheet material to be welded using this invention has a thickness of at least 0.5 millimeters . . . and the maximum sheet thickness is no greater than about 5 millimeters." '670 patent at col. 8 ll. 54-57. The second describes the preferred starting material, "this method of welding . . . can preferably be implemented for use with . . . sheets uncoiled from coiled stock." *Id.* at col. 8 ll. 12-16. The third describes the preferred shape after the welding process, "[a]fter welding, the sheets . . . preferably form a blank that can be formed using conventional forming methods such as bending, deep drawing . . . or another shaping or forming process." The district court reasoned that using the term "sheet" in claims made it clear the material at issue was something "broad and thin" because broad, thin materials may more easily undergo "bending, . . . another shaping or forming process" and "uncoiled from coiled stock." The court further noted the specification was consistent with the term's plain and ordinary meaning.

The district court's construction was well-reasoned and supported by the '670 patent. The district court did not import the specification's limitations or preferred embodiments. Instead, the court gave meaning to the

term as it was used throughout the specification. In addition, the trial court's claim construction does not depart from a customary understanding of the term in this area of art. The record does not support construing "sheets" to include any and all elements that may be welded together. Therefore, the district court's construction is consistent with the term's use in the '670 patent and its ordinary and customary meaning. Accordingly, the district court's determination is affirmed.

## AFFIRMED