NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BERISH RUBIN AND SYLVIA L. ANDERSON,**
*Plaintiffs-Appellants,*

**v.**

**THE GENERAL HOSPITAL CORPORATION,**
*Defendant-Appellee.*

---

2011-1439

---

Appeal from the United States District Court for the District of Massachusetts in No. 09-CV-10040, Judge Denise J. Casper.

---

Decided: March 28, 2013

---

PETER I. BERNSTEIN, Scully Scott Murphy & Presser, PC, of Garden City, New York, argued for plaintiffs-appellants. With him on the brief was RICHARD L. CATANIA.

BRIAN M. GAFF, Edwards Wildman Palmer, LLP, of Boston, Massachusetts, argued for defendant-appellee. With him on the brief were PETER J. CUOMO and MELISSA

HUNTER-ENSOR. Of counsel on the brief was PAUL G. CUSHING, Partners Healthcare of Boston, Massachusetts.

---

Before NEWMAN, BRYSON, *Circuit Judges,** and FOGEL,

*District Judge.***

NEWMAN, *Circuit Judge.*

This appeal is from the summary judgment of the United States District Court for the District of Massachusetts. The plaintiffs, Dr. Berish Y. Rubin and Dr. Sylvia L. Anderson, brought suit against The General Hospital Corporation (herein MGH), requesting correction of inventorship under 35 U.S.C. §256 of two patents assigned to MGH, or alternatively to invalidate the patents under 35 U.S.C. §102(f). The dispute arose from the allegedly improper communication to the named MGH inventors, Dr. James F. Gusella and Dr. Susan A. Slaugenhaupt, of a manuscript or the abstract thereof of a scientific article that Drs. Rubin and Anderson had submitted to the American Journal of Human Genetics for publication. The complaint states that the named inventors used this still confidential scientific information to complete the inventions described and claimed in the MGH patents. The district court granted summary judgment that remedy under §256 is not available, reasoning that these separate teams of scientists did not have a collaborative relationship and therefore could not

---

\* Circuit Judge Bryson assumed senior status on January 7, 2013.

\*\* Honorable Jeremy Fogel, United States District Court for the Northern District of California, by designation.

be joint or substitute inventors of the MGH patents.[1]  The district court previously dismissed the count under §102(f) as "duplicative" of the §256 counts.

On the record provided, we agree with the district court that resolution of the entirety of the dispute as set forth in the counts under §256 and §102(f) devolves to a question of priority of invention.  The district court proposed that priority should be resolved in accordance with the "interference" procedure in the Patent and Trademark Office, the court having ascertained that such procedure remains available to these disputants.  We conclude that the district court acted within its authority in directing the parties to the PTO for this purpose.  On this basis the judgment of dismissal is affirmed, without prejudice to the right of the parties to return to the district court for any further legal or equitable considerations that may be warranted.

## DISCUSSION

Drs. Rubin and Anderson at the Department of Biological Sciences of Fordham University, and Drs. Slaugenhaupt and Gusella at the Massachusetts General Hospital, had been conducting research to determine the genetic mutations that cause the inherited disease Familial Dysautonomia (FD), also known as Riley-Day Syndrome.  FD is an autosomal disorder that affects the development and survival of sensor and sympathetic neurons, and is manifested in severe afflictions including cardiovascular instability, gastrointestinal dysfunction, recurrent pneumonias, vomiting crises, and decreased sensitivity to pain and temperature.  There is no known cure.  Identifying the genetic cause can enable detection of carriers and prenatal diagnosis, and aid in the develop-

---

[1]  *Rubin v. General Hosp. Corp.*, No. 09-cv-10040, 2011 U.S. Dist. LEXIS 45859 (D. Mass. Apr. 28, 2011) ("S.J. Op.").

ment of therapeutic approaches.

Drs. Rubin and Anderson identified the two genetic mutations causative of FD, called the "major" and "minor" mutations. The record states that on December 20, 2000 they submitted the manuscript of an article entitled "Familial Dysautonomia Is Caused By Mutations of the IKAP Gene" to the Editor of the American Journal of Human Genetics. The article identified the operative mutations and their location in the region of the IKAP gene encoding a protein called IkB kinase complex-associated protein. Dr. Rubin wrote to Dr. Stephen Warren, the Editor of the Journal, and identified four scientists whom the authors believed to be qualified to peer-review the article; the scientists were at Cornell University, the University of California, Baylor University, and Sloan Kettering Institute. Dr. Rubin asked that Dr. Gusella and his colleagues at MGH not receive the article for peer-review because they were working competitively on the same problem. Letter dated Dec. 20, 2000 ("[W]e ask that our manuscript not be sent to these individuals for review."). On December 22, 2000, Dr. Warren sent the Abstract to Dr. Gusella. Dr. Warren testified:

> *Plaintiff's counsel*: So in the face of Dr. Rubin's— let me understand this. In the face of Dr. Rubin's request that you not share his information with Dr. Gusella, in particular, you sent him the abstract in the first instance on the same day as you sent it to all the other reviewers, and then subsequently shared information about his paper with Dr. Gusella; is that correct?
>
> *Defendant's counsel*: Objection.
>
> *Dr. Warren*: Correct.

Warren Depo. Tr. 109, ll.7-16.

Dr. Gusella declined to review the Rubin/Anderson article. On December 28, 2000, a manuscript authored by

Drs. Gusella and Slaugenhaupt was sent to Dr. Warren, identifying the same major and minor FD mutations. Both the Rubin/Anderson and the Gusella/Slaugenhaupt articles were published in the January 22, 2001 edition of the American Journal of Human Genetics.

On January 6, 2001, Drs. Gusella and Slaugenhaupt filed Provisional Patent Application No. 60/260,080 describing these FD mutations and claiming their diagnostic use. On January 17, 2001, Drs. Rubin and Anderson (with a third inventor) filed Provisional Patent Application No. 60/262,284 describing these FD mutations and claiming their diagnostic use. The patents in suit issued to Drs. Gusella and Slaugenhaupt, assigned to MGH: U.S. Patent No. 7,388,093 entitled "Gene For Identifying Individuals with Familial Dysautonomia" issued June 17, 2008; and divisional Patent No. 7,407,756 entitled "Methods for Detecting Mutations Associated With Familial Dysautonomia," issued August 5, 2008. The record states that Drs. Rubin and Anderson declined to take the steps to initiate an interference in the Patent and Trademark Office, although the patent examiner so suggested.

The plaintiffs argue that Dr. Gusella's receipt of their abstract permitted the MGH scientists to select and confirm the identity of the FD mutations and file the MGH provisional patent application. Invoking 35 U.S.C. §256, Drs. Rubin and Anderson request that they be substituted as the inventors of the patents in suit (Count I of the complaint), or added as joint inventors (Count II of the complaint).

> *§256   Correction of named inventor.*  Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intent on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other

requirements as may be imposed, issue a certificate correcting such error.

. . . The court before which such matter is called in question may order correction of the patent . . .

.

The plaintiffs state that the evidence shows that the Gusella/Slaugenhaupt team had found "a multitude of mutations" as "hundreds of single nucleotide polymorphisms, including a T to C base change in the IKAP gene," and that although the multitude included the correct major and minor mutations, Drs. Gusella and Slaugenhaupt had not yet identified and confirmed the operative mutations. The district court summarized the plaintiffs' position as follows:

> Counsel for Drs. Rubin and Anderson argued that the transmission of the Abstract, standing alone, amounts to collaboration. Specifically, counsel argued that Drs. Rubin and Anderson identified the mutations claimed in the two patents in the Abstract inadvertently transmitted to Dr. Gusella and that Dr. Gusella was able to identify the mutations only after he reviewed Dr. Rubin's Abstract which then allowed the MGH scientists to complete and file their patent application.

S.J. Op., at *19–20.

The district court held, granting MGH's motion for summary judgment, that the inventorship could not be changed under §256 because there was no "collaboration" between these teams of scientists. The court held that Drs. Rubin and Anderson could not be added as joint inventors of these patents, as requested in Count II, because they did not meet the requirements of §116 for joint invention. And the court held that the complete substitution of inventorship, as requested in Count I, is not a matter of correction of inventorship under §256, but

a claim for priority of invention of the subject matter. The court held that priority cannot be resolved under §256, but should be resolved by the PTO "interference" procedure of §135.

Drs. Rubin and Anderson argue that joint invention can arise in a variety of ways other than by direct collaboration. The plaintiffs cite *Kimberly-Clark Corp. v. The Proctor & Gamble Distrib. Co.,* 973 F.2d 911 (Fed. Cir. 1992), where this court held that joint invention can occur in situations where there is not direct collaboration or joint activity, giving the example of "one inventor seeing a relevant report and building upon it." *Id.* at 917. The plaintiffs argue that the receipt by Drs. Gusella and Slaugenhaupt of the confidential knowledge of the correct mutations, although the receipt was inadvertent on their part, allowed Drs. Gusella and Slaugenhaupt to finally identify the operative FD mutations from among the many mutations that they had found in samples of blood from FD patients. The plaintiffs state that this suffices to meet the standard for joint invention as set forth in *Kimberly-Clark.*

The plaintiffs state that the district court improperly granted adverse summary judgment by resolving disputed material facts in favor of the movant MGH, and that the court incorrectly applied the law. The plaintiffs stress the several admissions by Drs. Gusella and Slaugenhaupt that they had not identified the operative mutations. For example, in the published Abstract for a scientific presentation at a meeting of the American Society of Human Genetics in Philadelphia on October 3–7, 2000, Dr. Gusella wrote:

> To date, 184 DNA sequence differences between the control and FD sequence have been identified. We are currently assessing these DNA changes in FD and control individuals to determine which of these may be the pathogenic FD mutation.

Program Nr: 990 from the 2000 ASHG Annual Meeting. The record in the district court and on this appeal contains the minutes of monthly meetings of the Dysautonomia Foundation reporting statements from the MGH scientists, as late as December 12, 2000, that the mutations had not yet been found. Although the district court states in its opinion that the MGH scientists had previously identified the operative mutations, the contrary statements by the MGH inventors were not mentioned by the court in granting summary judgment in favor of MGH.

We conclude that the district court correctly ruled that the independent relationship between these teams of scientists, and the nature of this communication of information, do not support joint invention in accordance with §116, or warrant change or substitution of inventorship under §256. Although §256 is a general remedial statute, the district court correctly held that the record does not support "correcting" the named inventorship of the MGH patents.

We agree with the district court that, whatever actions were taken after the Rubin/Anderson Abstract appeared uninvited on Dr. Gusella's desk, ultimately the dispute is of priority of invention; that is, which team was the first to conclusively identify the operative mutations. The district court recognized that even if Drs. Gusella and Slaugenhaupt had completed this identification before they saw the Rubin/Anderson identification, it would still be necessary to determine priority of invention in order to resolve the patent rights. The district court did not err in ruling that the issue of priority is appropriately determined by PTO procedures.

The district court's dismissal, in contemplation of determination by the PTO of priority of invention, is affirmed.

**AFFIRMED**