ENVIRON PRODUCTS, INC.,
Plaintiff–Appellee,

v.

FURON COMPANY, Defendant–
Appellant.

Environ Products, Inc.,
Plaintiff–Appellee,

v.

Advanced Polymer Technology, Inc.
and Leo J. LeBlanc, Defendants–
Appellants.

EBW, Inc., Plaintiff–Appellant,

v.

Environ Products, Inc. and Michael
C. Webb, Defendants–Appellees.

Nos. 99–1218, 99–1219.

United States Court of Appeals,
Federal Circuit.

June 12, 2000.

Joseph R. DelMaster, Jr., Seidel, Gonda, Lavorgna & Monaco, P.C., of Philadelphia, Pennsylvania, argued for plaintiff-appellee and defendant-appellee Environ Products, Inc. and defendant-appellee Michael C. Webb. With him on the brief was Michael K. Levy.

Christopher B. Fagan, Fay, Sharpe, Beall, Fagan, Minnich & McKee, of Cleveland, Ohio, argued for defendant-appellant Furon Company. With him on the brief was Jay F. Moldovanyi. Of counsel was Joseph D. Dreher.

Marshall G. MacFarlane, Young & Basile, P.C., of Ann Arbor, Michigan, for defendants-appellants Advanced Polymer Technology, Inc. and Leo J. LeBlanc, and for plaintiff-appellant EBW, Inc.

Before MAYER, Chief Judge, NEWMAN and LOURIE, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Furon Company appeals the judgment of the United States District Court for the Eastern District of Pennsylvania, ruling that Michael Webb is the original inventor of the subject matter of United States Patent No. 5,297,896.[1] The judgment is affirmed.

## Background

Environ Products is the assignee of United States Patent No. 5,297,896, filed on March 25, 1992 and naming Michael Webb, president and founder of Environ, as the inventor. Furon is the assignee of United States Patent No. 5,343,738, filed on October 16, 1992 and naming Steven Skaggs, a Furon engineer and manager, as the inventor. Advanced Polymer Technology is the assignee of United States Patent Application No. 07/859,034, filed on March 27, 1992 and naming Leo J. LeBlanc and Andrew Youngs as joint inventors. It was agreed before the district court that the same invention, a flexible double-walled pipe for containment of hazardous fluids, is common to the two issued patents and the pending patent application.

The parties to this case were involved in various commercial relationships before these patent applications were filed. In brief summary, Environ was founded by Michael Webb to produce the flexible coaxial pipe of the patented structure. EBW invested in Environ as a start-up company, and Leo J. LeBlanc, owner of EBW, became a member of Environ's board of directors pursuant to this investment. Mr. LeBlanc later left Environ's board and founded Advanced Polymer Technology to manufacture flexible coaxial pipes. Furon had been retained by Environ to fabricate flexible coaxial pipes for Environ, and did so until Environ withdrew this arrangement; Furon then continued to manufacture the pipes for sale to others.

Various lawsuits ensued. Environ charged the other entities with infringement of the '896 patent and other wrongs

1. *Environ Prods., Inc. v. Furon Co.*, 47 USPQ2d 1040 (E.D.Pa.1998).

including conversion and unfair competition. Advanced Polymer and Mr. LeBlanc raised the defenses of prior invention and invalidity of Environ's patent, and counterclaimed for unfair competition and conversion. EBW filed suit against Environ challenging the inventorship of the '896 patent and raising issues of unfair competition, and also claiming joint ownership based on the "joint enterprise." Furon raised the defenses of invalidity for incorrect inventorship and its own asserted prior invention. Furon also filed a separate action charging Environ with infringement of the Furon '738 patent, in response to which Environ raised several defenses and counterclaims. The district court consolidated all of the cases, and separated the issue of inventorship for presentation to a jury.

***The Inventorship Trial***

The parties and the court agreed on the description of the common subject matter that would serve as the basis for determining who was the original inventor. This description, as stated in the jury instructions, included the following:

> The subject matter of the invention contested by the three parties is a flexi-

ble underground secondary containment pipe.

> The pipe has an inner fuel supply line, with a fluid resistant layer, and a secondary containment pipe encircling the inner supply pipe. Between the inner and secondary pipes are several ribs that are attached to either the inner or ... to the secondary pipe. In other words, the ribs can either go, sort of point outward from the center or they can point back inward from the secondary covering pipe.

> These ribs extend radially, that is to say, just like a circle. The radius from the circle, from the middle they extend out as you have seen no doubt in the sundry diagrams. These ribs extend radially to and contact the pipe to which they are not attached. And they fit closely enough against that pipe that the inner supply pipe cannot be removed from the secondary pipe....

> The ribs create one or more spaces between the inner supply pipe and the secondary pipe for collecting fuel that may leak from the primary pipe and allow the collected fuel to flow along the pipe....

The invention is illustrated in Fig. 1A of the '738 patent:

## FIG. 1A

The inner fuel supply line is shown at 10, with fluid resistant layer 12. Ribs 60 are attached to the secondary containment pipe 54 and extend radially to and contact the inner fuel supply line.

The parties presented testimony with respect to the activities of each of the

competing inventors as well as the relationships among them. The jury answered questions and rendered special verdicts, including the following:

No. 1. Did Leo LeBlanc and Andrew Youngs independently conceive the invention before March 25, 1992?

**No**

\* \* \* \* \* \*

No. 4. Did Michael Webb conceive the invention before the asserted date of the invention's conception by Leo LeBlanc and Andrew Youngs?

**Yes**

No. 5. Did Michael Webb communicate his conception of the invention to either Leo LeBlanc or Andrew Youngs?

**Yes**

No. 6. In light of your answers to questions four and five, did Advanced Polymer Technology or Leo LeBlanc use Michael Webb's conception of the coaxial pipe invention to apply for a patent on the invention?

**Yes**

No. 7. Did Steven Skaggs independently conceive the invention before March 25, 1992?

**No**

\* \* \* \* \* \*

No. 9. Did Michael Webb conceive the invention before the asserted date of the invention's conception by Steven Skaggs?

**Yes**

No. 10. Did Michael Webb communicate his complete conception of the invention to Steven Skaggs before the asserted date of the invention's conception by Steven Skaggs?

**Yes**

No. 11. In light of your answers to questions nine and ten, did Furon use Michael Webb's conception of the coaxial

pipe invention to apply for and obtain a patent on the invention?

**Yes**

No. 12. Who is the original inventor of the coaxial pipe described in Environ's U.S. Patent number 5,297,896, Furon's U.S. Patent No. 5,343,738, and Advanced Polymer Technology's U.S. Patent Application No. 07/859,034? (Check only one):

a. ___ Leo LeBlanc and Andrew Youngs, jointly (as shown by clear and convincing evidence)

b. ___ Leo LeBlanc, Andrew Youngs, and Michael Webb, jointly (as shown by clear and convincing evidence)

c. ___ Steven Skaggs (as shown by clear and convincing evidence)

d. √ Michael Webb (as shown by a pre-ponderance of the evidence)

e. ___ None of the parties has met its burden of proof.

The district court entered the verdicts, and decided a series of summary judgment motions. Environ was granted summary judgment in its favor on the issue of incorrect or joint inventorship of Environ's '896 patent, on Furon's claim for part ownership of the '896 patent, and on the federal and state unfair competition claims raised against Environ. Summary judgment was denied on Environ's unfair competition and conversion claims against the other entities, and on Furon's counterclaim that Environ infringed Furon's '738 patent.

Final judgment was entered as to inventorship; that is the only issue addressed on this appeal. Furon contends that a new trial is required, on the ground that the jury instructions were in error as to the standard of proof of priority and inventorship.[2] Furon does not otherwise challenge the jury verdicts, and raises no issue of entitlement to judgment as a matter of law.

**2.** Advanced Polymer Technology, Leo LeBlanc, and EBW, although submitting appellate briefs, did not argue their appeal, stating

that they had reached a tentative settlement with Environ. Their appeal is dismissed.

## A

■ Jury instructions must be free of prejudicial error, subject to the general rule that the asserted error was adequately raised for timely correction at trial. *See United States Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568, 41 USPQ2d 1225, 1236 (Fed.Cir.1997); *Jamesbury Corp. v. Litton Indus. Prods.,* 756 F.2d 1556, 1558, 225 USPQ 253, 255 (Fed.Cir. 1985). Prejudicial error is an error that, in the words of the Federal Rules of Civil Procedure, "appears to the court inconsistent with substantial justice." Fed. R.Civ.P. 61 (Harmless Error). If an asserted error did not prejudice any substantial interest of a party, that error is deemed harmless and the jury verdict is not disturbed. *See id.; ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 549–50, 48 USPQ2d 1321, 1332 (Fed.Cir.1998) (harmless error does not warrant a new trial).

Furon argues that it was error to place the "clear and convincing evidence" standard of proof of inventorship on those claimants whose filing dates were later than (*i.e.,* junior to) the filing date of the Webb patent (the first application filed). Furon states that the proper standard for all claimants should have been a preponderance of the evidence, the same standard as prevails in PTO interference practice for determining priority among copending applications. Alternatively, Furon states that clear and convincing evidence should have been the standard for all parties, particularly in view of Environ's requested remedy of constructive trust and its charges of conversion and fraud.

■ The two issued patents and the pending application were all co-pending in the Patent and Trademark Office. In a PTO administrative proceeding it would have been the burden of the junior appli-cants to establish prior invention by a preponderance of the evidence. *See* 37 C.F.R. § 1.657(b) (1998) ("In an interference ... a junior party shall have the burden of establishing priority by a preponderance of the evidence."); *Bruning v. Hirose,* 161 F.3d 681, 685–86, 48 USPQ2d 1934, 1938 (Fed.Cir.1998) ("During an interference involving a patent issued from an application that was copending with the interfering application, the appropriate standard of proof for validity challenges is the preponderance of the evidence standard."). The same burden would apply in a district court proceeding under 35 U.S.C. § 291.[3] *Cf. Kimberly–Clark Corp. v. Proctor & Gamble Distributing Co.,* 973 F.2d 911, 914, 23 USPQ2d 1921, 1924 (Fed.Cir.1992) (stating that in a § 291 action, the presumption of validity provided by 35 U.S.C. § 282 is "eroded by the grant of an 'interfering' patent.")

■ Neither of these paths was chosen by the parties. The challenge to inventorship was raised as an invalidity defense to Environ's charge of infringement of the Webb patent under 35 U.S.C. § 271. On this basis the district court accorded the Webb patent the statutory presumption of validity, 35 U.S.C. § 282, which requires that invalidity be established by clear and convincing evidence. Indeed, it is well established that persons defending against a charge of infringement on the ground of patent invalidity by virtue of prior invention or prior knowledge must establish this defense by clear and convincing evidence. *See, e.g., Oney v. Ratliff,* 182 F.3d 893, 895, 51 USPQ2d 1697, 1699 (Fed.Cir.1999); *Woodland Trust v. Flowertree Nursery, Inc.,* 148 F.3d 1368, 1371–73, 47 USPQ2d 1363, 1366–68 (Fed.Cir.1998); *Checkpoint Systems, Inc. v. United States Int'l Trade Comm'n,* 54 F.3d 756, 761, 35 USPQ2d 1042, 1046 (Fed.Cir.1995).

---

3. **35 U.S.C. § 291.**

The owner of an interfering patent may have relief against the owner of another by civil action, and the court may adjudge the question of the validity of any of the inter-fering patents, in whole or in part. The provisions of the second paragraph of section 146 of this title shall apply to actions brought under this section.

The case at bar differs from those in which the presumption of validity accorded a higher burden of proof to the challenged patent, however, in that the three competing claimants all had patent applications that were co-pending. As stated above, had these applications been the subject of an interference proceeding in the PTO or a § 291 proceeding in the district court, the burden of proof of prior invention would be with the junior applicants, but the standard of proof would be the preponderance of the evidence. The formality of invoking § 291 does not affect the standard of proof of priority of invention between co-pending interfering patents, whether the issue arises as a defense in an infringement suit or in an action designated as under § 291. The correct standard of proof of priority of invention, as between co-pending interfering patents, is the preponderance of the evidence, the junior patentee bearing the burden of pleading and proving priority.[4]

Thus, the jury instruction that Furon was required to show that Steven Skaggs was the original inventor of the coaxial pipe by clear and convincing evidence was flawed. Environ states that any error was harmless in this case. It is necessary to consider the entirety of the proceedings, including the jury instructions as a whole, to determine whether prejudicial error occurred. *See Delta–X Corp. v. Baker Hughes Production Tools, Inc.*, 984 F.2d 410, 415, 25 USPQ2d 1447, 1450–51 (Fed.Cir.1993) ("After viewing instructions in their entirety, this court only orders a new trial when errors in the instructions as a whole clearly misled the jury.") (citing *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1518, 220 USPQ 929, 940 (Fed.Cir.1984)).

**B**

Environ points to several specific jury answers to questions concerning pri-

ority of conception as to each claimant, particularly those expressly finding communication by Webb to the other claimants and the use by Furon of Webb's idea in preparing its own patent application, as support for its position that any error is harmless. Environ also states that the result would necessarily have been the same whether the jury's conclusion on the ultimate question of inventorship, question No. 12, was decided on the preponderance of the evidence standard or the clear and convincing standard, because the question required an answer in the alternative, depending on the jury's determinations of credibility. If the jury believed that Michael Webb was the inventor, as the jury had concluded in earlier questions, then the inventor could not have been Steven Skaggs. Conversely, if the jury believed that Steven Skaggs was the inventor, a conclusion already rejected by the jury, then the inventor could not have been Michael Webb. Further, if the jury could have found that Skaggs was the inventor by a preponderance but not by clear and convincing evidence, the jury could not have found that Webb was the inventor by a preponderance. Thus the only possible consistent view of the jury's verdicts is that Webb was the inventor. It is highly relevant that the jury answers to the preceding questions are entirely consistent with the answer to question No. 12, and indeed could support no other answer than the one given.

An apt analogy is seen in *Tatro v. Kervin*, 41 F.3d 9, 17 (1st Cir.1994), wherein an erroneous jury instruction as to weight of proof was deemed harmless in view of the "two dramatically conflicting versions of the events [which] required the jury to ascribe to either one version or the other." When the error as to the weight of proof could not have changed the result, the erroneous instruction is harmless. *See*

---

**4.** The question relates solely to that of priority of invention of common claimed subject matter in issued patents; this does not affect the

standard of proof as to any other question that may be in dispute.

11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2886 (2d ed.1995) ("Errors in instructions routinely are ignored if . . . the error could not have changed the result."). This procedural flaw could not have changed the result, and there is no ground for viewing the trial as unfair. *See Newell Companies, Inc. v. Kenney Mfg. Co.,* 864 F.2d 757, 765, 9 USPQ2d 1417, 1424 (Fed. Cir.1988) ("Trials must be fair, not perfect."). Furon has not established entitlement to a new trial. *See Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 626, 225 USPQ 634, 643 (Fed.Cir.1985) (stating that a new trial is required only on a showing of either prejudicial error or a verdict against the clear weight of the evidence).

## C

Furon alternatively argues that Environ's burden of proof of Webb's inventorship should have been set at the clear and convincing level due to Environ's claims of breach of fiduciary duty, conversion, fraud, and deceit. However, as established in the district court's orders, the only issue before the jury was that of priority of inventorship of co-pending patents and applications. Whatever burden must be met to establish these other charges on remand, they are unrelated to the standard applied to determination of priority of inventorship of interfering patents.

*Conclusion*

The error in instructing the jury was harmless. The judgment entered on the jury verdict is affirmed, and the case is remanded for further proceedings.

*AFFIRMED; REMANDED*

Costs to Environ, Fed. Cir. R. 39(a).